UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN ROLLINGER,

Plaintiff,

v.

FCA US LLC,

Defendant.

Case No. 2:20-cv-11242

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT [30]**

Plaintiff Kathleen Rollinger moved for partial summary judgment on whether Michigan law would allow Defendant FCA to set off any liability for future medical costs. ECF 30. The parties briefed the motion, and the Court held a hearing. ECF 34. For the following reasons, the Court will deny the motion.

**BACKGROUND**

Plaintiff's husband was injured in a car accident five years ago. ECF 30-2, PgID 180. At the time, Plaintiff's husband had car insurance through Allstate. ECF 32-2, PgID 264. The policy covered unlimited medical costs for the accident. *Id.* at 268. Allstate has since paid more than three million dollars for the husband's medical claims that arose from the accident. ECF 30-2, PgID 182; ECF 32-4, PgID 323. Allstate's obligation to pay the claims is ongoing, and no party disputes that Allstate must continue to pay. ECF 30-2, PgID 181–82.

Almost three years after the accident, Plaintiff, in her capacity as her husband's conservator, sued Defendant for breach of implied warranty and negligence. ECF 1, PgID 1, 7–9. Plaintiff's husband is now sixty-three years old. ECF 33, PgID 397 n.3.

Plaintiff has moved for partial summary judgment on Defendant's eleventh affirmative defense. ECF 30, PgID 152. The defense asserted that Defendant may "set-off . . . any recovery against it to the extent [that] any and all benefits paid or payable to on behalf of . . . Plaintiff[] [are] from any collateral sources." ECF 7, PgID 39. According to Plaintiff, Michigan law allows Defendant to set off only past medical costs—not future medical costs. ECF 30, PgID 153, 160.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174

(6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

**DISCUSSION**

The dispute turns on the text of Michigan's statutory collateral source rule that is found at Mich. Comp. Laws §§ 600.6303, 600.6306. Before interpreting the rule, Defendant argued that Section 6306 does not apply for two reasons. First, Section 6311's plain text bars Section 6306 from applying. ECF 32, PgID 234–35. Second, Section 6306 is not substantive Michigan law and so the Court cannot apply it under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). ECF 32, PgID 235–37. The Court will first provide background about Michigan's collateral source rule. After, the Court will explain why Section 6306 applies to the present dispute. Last, the Court will detail why Defendant argued the better reading of the statutory scheme.

I. Background

Michigan's "common-law collateral-source rule provides that the recovery of damages from a tortfeasor is *not* reduced by the plaintiff's receipt of money in compensation for his injuries from other sources." *Tebo v. Havlik,* 418 Mich. 350, 366 (1984) (emphasis added) (citations omitted). But in 1986, the Michigan Legislature enacted the statutory collateral source rule "as part of a wave of comprehensive tort

reforms." *Greer v. Advantage Health*, 499 Mich. 975, 880 N.W.2d 786, 787 (Mem.) (2016) (Zahra, J., concurring); *see* ECF 32-5, PgID 366–69. The "rule is designed to prevent double recovery by plaintiffs." *State Auto. Mut. Ins. Co. v. Fieger*, 477 Mich. 1068, 1072 (2007) (Young, J. concurring); *see also* Christopher Doyle, *Collateral Damage*, 96-Mar. Mich. Bar J. 32, 34 n.13 (2017) (collecting cases).

Under the statutory rule, when personal injury verdicts involve damages for "medical care," "loss of earning capacity, or other economic loss," the Court must "reduce that portion of the judgment which represents damages paid or payable by a collateral source." Mich. Comp. Laws § 600.6303(1). A "'collateral source' means benefits received or receivable from an insurance policy." § 600.6303(4). And "benefits from a collateral source" are not "considered payable or receivable unless" the Court finds an "existing contractual or statutory obligation" for the "collateral source to pay the benefits." § 600.6303(5).

When a court renders a verdict for a plaintiff, it must issue judgment for "[a]ll past economic damages, less collateral source payments as provided for in section 6303." § 6306(1)(a). The judgment must include "[a]ll future economic damages, less medical and other health care costs and less collateral source payments determined to be collectible under section 6303(5), reduced to gross present cash value." § 6306(1)(c). And it must also include "[a]ll future medical and other health care costs, reduced to gross present cash value." § 600.6306(1)(d). But "Sections 6306(1)(c), (d) . . . do not apply to a plaintiff who is 60 years of age or older at the time of judgment." § 600.6311.

II. Section 6311

The parties agree that Section 6311 applies here because Plaintiff's husband is more than sixty years old. ECF 32, PgID 234; ECF 33, PgID 397; *see Shinholster v. Annapolis Hosp.*, 471 Mich. 540, 570–71 (2004) (noting that the age of the real party in interest—not the age of the estate representative—determines whether Section 6311 applies). The parties, however, disagree about how to read Section 6311. ECF 32, PgID 234; ECF 33, PgID 397. Simply put, Section 6311 is not as far reaching as Defendant stressed.

Defendant reasoned that Section 6311's plain text bars Sections 6306(1)(c), (d). ("Sections 6306(1)(c), (d) . . . do not apply to a plaintiff who is 60 years of age or older at the time of judgment."). But Michigan Courts have read Section 6311 to merely prevent a court from "reduc[ing] any future damages award to plaintiff to their present value." *Shinholster*, 471 Mich. at 572. As the Michigan Court of Appeals put it, "[w]e find that [Sections] 6306 and 6311, read together, evince a legislative intent that future damages and costs awarded to plaintiffs who are sixty-years . . . of age or older at the time of the judgment *should not be reduced* to gross present cash value." *Mackie v. Grand Truck W. R.R. Co.*, 215 Mich. App. 20, 29 (1996) (per curiam) (emphasis added); *see also Haas v. Briggs*, Nos. 224753, et al., 2002 WL 31013706, at *5 (Mich. Ct. App. Sept. 3, 2002) (per curiam) (When "a verdict includes future damages, the future damages must be reduced to gross present cash value, unless the plaintiff is sixty years of age or older.") (internal citation omitted). Section 6311 thus "does not, by exempting persons sixty years of age or older from parts of [Section]

6306, operate to deny a plaintiff's rights to future costs and damages." *Mackie*, 215 Mich. App. at 29.

Defendant never explained why the Michigan Supreme Court would not adopt the same holding as the Court of Appeals. *See generally* ECF 32, PgID 234–35. Because the Court must follow *Mackie*'s holding, Section 6311 does not bar Section 6306 from applying here. *See United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 789 (6th Cir. 1997) (The "[C]ourt is bound by the decisions of [Michigan's] intermediate appellate courts unless convinced that the Michigan Supreme Court would decide the question differently.") (citation omitted).

III. *Erie*

Under *Erie*, a federal court sitting in diversity must apply the forum state's substantive law and federal procedural law. 304 U.S. at 78. Defendant claimed that Section 6306 cannot apply to the dispute because it is a procedural law and conflicts with Federal Rule of Civil Procedure 58. ECF 32, PgID 235–37.

The Court will apply federal procedural law—not state law—when the following occurs. First, the state law must not conflict with a valid, on point federal procedural rule. *Hanna v. Plumer*, 380 U.S. 460, 470–74 (1965). If a state law conflicts with a procedural rule, the federal rule governs so long as it regulates procedure. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407–10 (2010) (plurality). But if the state law does not conflict with the federal rule, then the Court must apply the outcome determinative test. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427–28 (1996) (quotation omitted).

Under the test set forth over the years by the Supreme Court, the Court must ask, "does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Id.* at 427 (alteration omitted) (quoting *Guar. Tr. Co. v. York*, 326 U.S. 99, 109 (1945)). The test is "guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* at 428 (quoting *Hanna*, 380 U.S. at 468).

The Legislature titled Section 6306 "[o]rder of judgment, actions other than for medical malpractice; determination." It provides that the Court must enter a judgment against a defendant for "[a]ll future economic damages, less medical and other health care costs and less collateral source payments determined to be collectable under section 6303(5)" as well as "[a]ll future medical and other health care costs." § 600.6306(1)(c), (d). Both damages must be "reduced to gross present cash value" unless the plaintiff is sixty years or older when the Court enters judgment. *Mackie*, 215 Mich. App. at 29.

The Michigan Court of Appeals has held that, at its core, Section 6306 "merely standardizes orders of judgment and requires certain reductions in certain cases." *Id.* And it "does not itself establish rights to future damages and costs." *Id.*

Still, Civil Rule 58's text does not address whether the Court must reduce a future damages award to the gross present cash value. The Rule's text dictates only that the Court act in other ways. The Rule, for example, explains when the Court must enter judgment. Fed. R. Civ. P. 58(c). It also requires the Court to enter a

judgment “in a separate document.” Fed R. Civ. P. 58(a). And it allows the Clerk of the Court to enter judgments without a Court order. Fed. R. Civ. P. 58(b). All told, nothing in the Rule’s “plain meaning” conflicts with Section 6306. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980); *see Slifcak v. N. Mich. Hosps., Inc.*, No. 1:90-CV-565, 1991 WL 626469, at *4 (W.D. Mich. Aug 20, 1991) (“The federal rules cited by plaintiffs [including Rule 58] are not so specific as to come into direct conflict with the state law incorporated in sections 6305 and 6306.”).

Without a direct conflict, Defendant reasoned that because Rule 58 “delineat[es] specific requirements, Rule 58 ‘implicitly excludes other requirements.’” ECF 32, PgID 237 (quotation and citations omitted). But the cases that Defendant leaned on did not involve Rule 58. *Shady Grove Orthopedic Assocs., P.A.*, 559 U.S. at 398 (Rule 23); *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (Rule 8). In short, rather than examine Rule 58’s plain meaning, Defendant’s argument glossed over it and asked the Court to construe Rule 58 too broadly.

Besides ignoring Rule 58’s text, Defendant also suggested that because Michigan Courts view Section 6306 as a procedural rule, the Court need not apply it. ECF 32, PgID 236–37 (citing Michigan cases). But those holdings are irrelevant. “[F]ederal courts are not bound to follow a state’s own characterization of its rule in determining whether to apply a state law under *Erie*.” *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 847–48 (W.D. Mich. 2012) (citing *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 550 (1958) (“It is therefore immaterial whether (state-created rights) are characterized either as ‘substantive’ or ‘procedural’ in State court

opinions in any use of those terms unrelated to the specific issue before us.")). After all, the first step under *Erie* focuses on whether the state law conflicts with a valid, on point federal procedural rule—not whether a state treats its own law as procedural. *Hanna*, 380 U.S. at 470–74.

What is more, Defendant ignored the federal courts that have ruled Section 6306 is substantive Michigan law that federal courts must apply. *Emerson v. Metro Steel Straightening, Inc.*, 991 F.2d 799 (Table), 1993 WL 113710, at *1 (7th Cir. 1993) ("Michigan law, which governs in this diversity action, calls on the judge to discount these future losses to present value.") (citing §§ 6305(b), 6306); *Slifcak*, 1991 WL 626469, at *4.

Given that Section 6306 and Rule 58 do not conflict, the Court must apply the outcome-determinative test. *Gasperini*, 518 U.S. at 427–28. Although Section 6306 would not affect the trial proceedings, it may affect the payout for Plaintiff if she wins at trial. On the one hand, her husband's age triggers Section 6311, so the Court could not reduce future damages "to gross present cash value" under Section 6306. *Mackie*, 215 Mich. App. at 29. Thus, no specific damage reduction would occur even if the Court applied Section 6306. *See Hanna*, 380 U.S. at 468. On the other hand, Plaintiff's reading of Section 6306 does not allow a setoff for future medical costs. If the Court ignored Section 6306, then Plaintiff's damages would differ from what they could be in state court if the state court were to adopt Plaintiff's reading of Section 6306. In that case, not applying Section 6306 would lead to forum-shopping and unjust results.

*See Hanna*, 380 U.S. at 468. Section 6306 is therefore outcome determinative, so the Court will apply it.

To confirm, a comprehensive view of Section 6306 supports the Court applying it as Michigan substantive law. For one, Plaintiff's motion relied on Sections 6303 and 6306—not solely Section 6306.[1] ECF 30, PgID 160, 168; ECF 33, PgID 398. Defendant even suggested that the Court read the two sections together. ECF 32, PgID 241 ("[S]ection 6306 incorporates—not narrows—section 6303."). And the two statutes do indeed enforce Michigan's statutory collateral source rule. *See Greer*, 499 Mich. 975, 880 N.W.2d at 787 (Zahra, J., concurring); *see also Fieger*, 477 Mich. at 1072 (Young, J. concurring). It follows that the Court should read the two sections as part of Michigan's substantive statutory collateral source rule. *See generally People v. Mazur*, 497 Mich. 302, 313 (2015) (citation omitted). And because the two sections "concern and are central to the calculation of damages in medical malpractice actions, and reflect the state's policy of preventing double recovery in personal injury cases and limiting the award of noneconomic damages" the Court must apply them. *Slifcak*, 1991 WL 626469, at *4.

If any doubt remained, the Sixth Circuit has routinely found that a state's collateral source rules are substantive law that federal courts must apply under *Erie*. *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994); *see, e.g.*, *Pellow v. Daimler Chrysler Servs. N. Am., LLC*, 153 Lab. Cas. P. 35,187, 2006 WL 2540947, at *11 (E.D. Mich. 2006) (collecting cases). In all, Section 6306 is part of the larger

[1] Plaintiff's counsel confirmed this much at the motion hearing.

statutory scheme that makes up Michigan's substantive statutory collateral source rule. As substantive law, the Court will apply Section 6306, along with Section 6303, and turn to the merits of Plaintiff's motion.

III. Michigan's Statutory Collateral Source Rule

When interpreting a substantive state statute, the Court "must follow state interpretations of [those] statutes, and must predict how the state Supreme Court would [interpret the statute] if it has not yet done so." *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019) (alterations in original) (internal quotation marks and citations removed). For statutory text, the Michigan Supreme Court interprets words based on "their ordinary meaning and their context within the statute and read[s] them harmoniously to give effect to the statute as a whole." *People v. Peltola*, 489 Mich. 174, 181 (2011). The Court must also consider the text's "placement and purpose in the statutory scheme." *Speicher v. Columbia Twp. Bd. of Trs.*, 497 Mich. 125, 134 (2014) (quotation omitted). And the Court "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*, 466 Mich. 142, 146 (2002) (citation omitted).

When statutes regulate "the same subject [matter] or [] share a common purpose," the Michigan Supreme Court follows the *in pari materia* doctrine. *Mazur*, 497 Mich. at 313 (citation omitted). *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 39 (2012) (related-statutes canon). Under the doctrine, the statutes "should, if possible, be read together to create a

harmonious body of law." *Id.* Indeed, "[t]wo statutes that form 'a part of one regulatory scheme' should be read [in a like manner]." *People v. Stephan*, 241 Mich. App. 482, 498 (2000) (quoting *In re Complaint of Southfield Against Ameritech Mich.*, 235 Mich. App. 523, 527 (1999)).

Defendant explained that Plaintiff's reading of Section 6306(1)(c) and (d) ignores the larger statutory scheme's text, structure, history, and purpose. *Id.* at 237–49. Plaintiff, however, read Section 6306 outside its statutory context, and instead relied on unpublished case law and policy to support her reading of the statutes. ECF 30, PgID 171–75.

Because the Michigan Supreme Court has not ruled on the precise issue, the Court must "make the best prediction . . . of what the [State's] Supreme Court would do if it were confronted with the question." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (cleaned up). The Court must also "be extremely cautious" about expanding Michigan's law, and "consider all relevant data." *Id.* at 577–78 (cleaned up). As explained below, Plaintiff's reading of Sections 6303 and 6306 errs for four reasons.

*A. Harmonious Reading of Sections 6303 and 6306*

The Court must read Sections 6303 and 6306 "together to create a harmonious body of law." *Mazur*, 497 Mich. at 313 (citation omitted). To do so, the Court must "consider both the plain meaning of the [text] as well as its placement and purpose in the statutory scheme." *Speicher*, 497 Mich. at 133–34. As a structural matter, the Legislature wrote the two sections in the same chapter governing "Personal Injury

Verdicts and Damages." ECF 32-5, PgID 366–68. And as a textual matter, Section 6306 refers to Section 6303 twice. § 600.6306(1)(a), (1)(c). Because of the interplay between Section 6303 and 6306, the Legislature necessarily intended the two statutes to complement one another. *See Mazur*, 497 Mich. at 313. And reading the two statutes harmoniously supports Defendant's reading of the statutory scheme.

The Legislature titled Section 6303 "[c]ollateral source benefits; reduction of damages; subrogation; definition." As Defendant highlighted, Section 6303 is the core provision of Michigan's collateral source rule. ECF 32, PgID 239. It defines a "collateral source" payment, § 600.6303(4), it explains when collateral source evidence is admissible, § 600.6303(1), it outlines when the Court must apply collateral source payments, *id.*, it notes which part of the judgment the Court must reduce, *id.*, it details when collateral source benefits are payable or receivable, § 600.6303(5), and it even bars the collateral source rule if benefits come from certain sources, § 600.6303(4). In brief, Section 6303 is the backbone of Michigan's collateral source rule.

Michigan Supreme Court justices have even interpreted Section 6303 as the heart of the collateral source rule. *Greer*, 499 Mich. 975, 880 N.W.2d at 787 (Zahra, J., concurring); *Anderson v. State Farm Mut. Auto. Ins. Co.*, 488 Mich. 865, 415 (2010) (Corrigan, J., dissenting). As Justice Zahra noted, Michigan's Legislature passed Section 6303 to "abrogate[] the common-law collateral-source rule for tort claims . . . as part of a wave of comprehensive tort reforms." *Greer*, 499 Mich. 975, 880 N.W. 2d at 787 (Zahra, J., concurring); *see also Heinz v. Chi. Rd. Inv. Co.*, 216 Mich.

App. 289, 301 (1996). And as Justice Young pointed out, Section 6303(1) is the provision that requires a court to "reduce the judgment" by a certain amount. *Fieger*, 477 Mich. at 1072 (Young, J., concurring) (citing § 600.6303(1)).

In contrast, Section 6306 tells the Court to take two actions: enter a judgment for certain amounts, § 600.6306(1)(a)–(f), and reduce future damages "to gross present cash value," § 600.6306(1)(c)–(e).[2] It also defines "gross present cash value." § 600.6306(2). Altogether, Section 6306 simply instructs a court how to make "certain reductions in certain cases"; it "does not itself establish rights to future damages and costs." *Mackie*, 215 Mich. App. at 29; *see also Fieger*, 477 Mich. at 1072 (Young, J., concurring) (noting that Section 6306 only specifies that a "judgment must contain a number of elements of damages").

Thus, the best way to read Sections 6303 and 6306 together is as follows. Section 6303(1) creates the collateral source rule. Under the rule, the Court must equally "reduce" the "portion of the judgment that represents damages paid or payable by a collateral source." § 600.6303(1). Before the Court reduces any judgment, it must take two actions. First, it must confirm that the damages came from a "collateral source." § 600.6303(4). Second, it must "determine the amount of the plaintiff's expense or loss which has been paid or is payable by a collateral source." § 600.6303(2). To be "considered payable or receivable" the Court must find an

[2] Although the Legislature amended the collateral source rule to account for medical malpractice cases, Section 6306 remains unchanged for personal injury actions other than medical malpractice claims, which is irrelevant here. Harry M. Philo, *Trial Handbook for Michigan Lawyers* § 35:8 (Susan G. Wright ed. 4th ed. 2021).

"existing contractual or statutory obligation on the part of the collateral source to pay the benefits." § 600.6303(5). After those steps are both satisfied, then the Court will enter judgment based on Section 6306. When the Court enters a judgment, it lists the amounts for past damages and future damages. § 600.6306(1)(a)–(e). If the judgment includes future damages, the Court reduces the amount "to gross present cash value," unless a plaintiff is sixty years or older. §§ 600.6306(1)(c)–(e), 600.6311; *Mackie*, 215 Mich. App. at 29. After listing the amounts for past damages and future damages, the Court then uses those amounts to "reduce that portion of the judgment." § 600.6303(1). At bottom, the two statutes work together and instruct the Court about how to reduce the judgment based on collateral source payments for past damages, future damages, and future medical costs.

*B. Plain Text and Purpose of Section 6303*

Second, Section 6303's plain text and purpose stymie Plaintiff's reading of the statutory scheme. *See Speicher*, 497 Mich. at 134 (recalling that courts must consider the plain meaning and purpose of the text when reading a statute). According to Plaintiff, Section 6303 applies only to a benefit that "has been paid or is payable"—not "will be payable in the future." ECF 30, PgID 168 (emphasis omitted). Thus, under Plaintiff's reading, any future benefit that a collateral source will pay after the judgment, would not qualify for a setoff.

But a "payable" benefit need only have an "existing contractual or statutory obligation on the part of the collateral source to pay the benefits." § 600.6303(5). And the Michigan Court of Appeals has said as much. *Haberkorn v. Chrysler Corp. (Two*

*Cases)*, 210 Mich. App. 354, 376 (1995) (Section 6303(5) "only requires collateral source benefits to be based on a 'previously existing contractual or statutory obligation' to pay. It does not require a previously existing and perpetual obligation to pay.") (emphasis omitted). The collateral source rule therefore allows future benefits to be "payable" so long as a contract or statute require the collateral source to pay the future benefit.[3] And that scenario is no different from what is at issue here: Allstate has a contractual obligation to pay the future medical bills for Plaintiff's husband. ECF 32-2, PgID 268. As a result, the plain text treats Plaintiff's future medical bills as "payable" under Section 6303(5) and the Court must reduce the judgment by that amount under Section 6303(1).

Consider too that if the statutes barred Defendant from seeking a setoff under Section 6303, then Plaintiff would double dip on her recovery for future medical costs. The rule was, after all, intended "to prevent personal injury plaintiffs from being compensated twice for the same injury." *Heinz*, 216 Mich. App. at 301. "Given this legislative purpose, it seems counterintuitive that the Legislature would enact the statute with a loophole that permits a plaintiff to recover for medical expenses" to be paid. *Greer*, 499 Mich. 975, 880 N.W. 2d at 787 (Zahra, J., concurring).

Still, Plaintiff downplayed the Legislature's goal to prevent double recoveries. ECF 30, PgID 173–75. Plaintiff stressed that "there is nothing inherently unfair or violative of public policy in the common law collateral source rule." *Id.* at 174. But the

[3] Section 6306 contemplates two kinds of damages: past and future. § 600.6306(1)(a)–(3).

common law is irrelevant to the pending motion because only Michigan's *statutory* collateral source rule applies. *See Greer*, 499 Mich. 975, 880 N.W.2d at 787 (Zahra, J., concurring) (recalling that the statutory collateral source rule abrogated the common law collateral source rule). In all, Plaintiff's reading not only skirts Section 6303's plain text, but also conflicts with its core purpose.

*C. Errors with Plaintiff's Reading of Section 6306*

Third, Plaintiff reads Section 6306 in a vacuum. Plaintiff suggested that because the Legislature listed future medical costs under Section 6306(1)(d), the costs cannot qualify as future economic damages in Section 6306(1)(c), and so the costs cannot reduce the judgment. ECF 30, PgID 168. But the Michigan Court of Appeals already suggested that a trial court may reduce future medical costs under the collateral source rule. *Thomas v. Ferguson*, No. 292445, 2012 WL 6720579, at *15 (Dec. 27, 2012).

Besides, Section 6306(1)(c)–(e) merely separates future damages into three categories: economic, medical, and noneconomic. And that list is crucial for allowing Section 6307, "the annuity purchase statute," to carry out its role in the statutory scheme. *Hall v. Henry Ford Health Sys.*, No. 248358, 2005 WL 473683, at *17 (Mich. Ct. App. Mar. 1, 2005) (per curiam).

Section 6307's text allows an annuity contract for a defendant that owes future economic and future noneconomic damages. ("[I]f the amount of future damages, as described in section 6306(1)(c) and (e) . . . in the judgment exceeds $250,000.00 gross present cash value, . . . the court shall enter an order the defendant . . . shall satisfy

that amount of the judgment . . . by the purchase of an annuity contract."); *see also Velez v. Tuma*, 492 Mich. 1, 33 (2012) (Hathaway, J., dissenting). But its text bars an annuity contract for future medical damages. *See Williams v. Chelsea Comm. Hosp.*, No. 261946, 2006 WL 3826743, at *9 (Mich. Ct. App. Dec. 28, 2006) (per curiam) (holding that Section 6307's text "is not ambiguous"). It follows that when two statutes are read together, Section 6307 relies on Section 6306's list to "aid[] a plaintiff in the collection of a *certain subset* of future damages." *Hall*, 2005 WL 473683, at *17 (emphasis added). Thus, the best way to read Section 6306's list is as a guide to what damages trigger the annuity purchase provision in Section 6307.

Still, Plaintiff countered that the practical trouble in measuring future medical damages supports her Section 6306 reading. ECF 30, PgID 171–73. The claim, however, is not unique to future medical damages. In fact, "[t]he amount of damage in the case of insurance premiums is *no more difficult* to measure than future medical expenses and future loss of earnings in some personal injury actions." *McPherson v. Cleveland Punch & Shear Co.*, 816 F.2d 249, 254 (6th Cir. 1987). And for that reason, future damages need only have a "reasonable basis"—not certainty. *Shivers v. Schmiege*, 285 Mich. App. 636, 644 (2009) (emphasis and citations omitted). Plaintiff's theory for why the Legislature would have created the exception fails to reconcile why the Legislature allows setoffs for other future damages. *See* § 600.6306(1)(c). In the end, Plaintiff's reading of Section 6306 is not persuasive and stems from reading it without considering the statutory scheme.

*D. Case Law that Supports Plaintiff's Reading*

Last, Plaintiff pushed error-ridden cases to support her reading of Section 6306. ECF 30, PgID 169–71. For example, one case, *Bender v. Farmington Ridge*, held that, based on the Section 6306's plain text, "the collateral source rule does not apply to future medical and other health care costs." No. 208545, 2000 WL 33407113, at *3 (Mich. Ct. App. Sept. 8, 2000). But *Bender* has two problems. First, it ignored binding precedent that Section 6306 "merely standardizes orders of judgment and requires certain reductions in certain cases, [and] does not itself establish rights to future damages and costs." *Mackie*, 215 Mich. App. at 29; *see also* Mich. Ct. R. 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990."). To that end, *Bender* did not even address *Mackie*. *See Bender*, 2000 WL 33407113, at *3. And because of that, the two holdings contradict each other: *Mackie* held Section 6306 was a minor section that standardized judgments while *Bender* held Section 6306 was a glaring exception to the collateral source rule. Given that the Court cannot consider unpublished Michigan Court of Appeals cases that conflict with published Michigan Court of Appeals cases, the Court cannot defer to *Bender*. *See Lakeland Reg'l Health Sys. v. Walgreens Health Initiatives, Inc.*, 604 F. Supp. 2d 983, 990 (W.D. Mich. 2009) (citations omitted).

Plaintiff also relied on *Amlotte v. United States*, 292 F. Supp. 2d 922 (E.D. Mich. 2003). But *Amlotte* suffers from three errors. One, it interpreted Section 6306 too literally without reading Section 6303 and the larger statutory scheme. *See id.* at

926–27. Two, *Amlotte* never addressed *Mackie*—the only published Court of Appeals case to interpret Section 6306. *See* 292 F. Supp. 2d at 926. *Amlotte* instead mistakenly noted that the Michigan Court of Appeals had never interpreted Section 6306 in a published opinion. *Id.* That said, the mistake was bound to happen because the parties agreed with *Bender*'s holding and the Court lacked adversarial briefing on the issue. *Id.* ("The defendant does not dispute the plaintiffs' interpretation of Michigan's statutory collateral source rule."). And three, because *Bender* conflicts with *Mackie* (an earlier, published Court of Appeals opinion), the Court cannot rely on it. *See Lakeland Reg'l Health Sys.*, 604 F. Supp. 2d at 990.[4]

As for the holding in *Jimkoski v. Schupe* that Plaintiff raised at the hearing, it differs from the present dispute. 282 Mich. App. 1, 12–13 (2008). There, the Court of Appeals denied a setoff for future cost of living adjustments for social security benefits—not solely future social security benefits. *Id.* And unlike future medical expenses or future social security benefits, future social security cost of living adjustments are "impossible to predict without rank speculation." *Id.*

The bottom line is that these cases interpreted Section 6306 to create a bizarre exception to the collateral source for *only* future medical costs. *Makki*, 2009 WL 10680504, at *3; *Amlotte*, 292 F. Supp. 2d at 926–27; *Bender*, 2000 WL 33407113, at *3. But it makes little sense for the Legislature to hide such a notable exception to

---

[4] Another unpublished Eastern District of Michigan case raised in Plaintiff's reply brief suffers from many of the same errors as *Amlotte*. *Makki v. OSI Sealants, Inc.*, Nos. 06-14328, 14329, 2009 WL 10680504, at *3 (E.D. Mich. Apr. 2, 2009); ECF 33, PgID 399.

the collateral source rule in a minor statutory section that "does not [] establish rights to future damages and costs." *Mackie*, 215 Mich. App. at 29; *see People v. Arnold*, 502 Mich. 438, 480 n.18 (2018) ("[T]he Legislature 'does not, one might say, hide elephants in mouseholes.'") (quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001)). Rather, if the Legislature were to create an exception, the Legislature would likely write it in the statutory scheme's backbone: Section 6303. To be sure, Section 6303 already contains many exceptions to the collateral source rule. § 600.6303(2) ("Except for premiums on insurance which is required by law . . . ."); § 600.6303(4) ("Collateral source does not include . . . ."). In all, the cases that Plaintiff cited do not persuade the Court to adopt her reading of Section 6306.

In sum, the Court will deny Plaintiff's motion for partial summary judgment. Defendant may seek a setoff for future medical costs under Mich. Comp. Laws §§ 6303, 6306.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the motion for partial summary judgment [30] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 4, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 4, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager